# SAMUEL NICHOLSON
## V.
# THE PEOPLE, ETC.

*Dram Shops—Municipal Corporations—Payment of License—Keeping a Common Nuisance—Dram-Shop Act, Secs. 2, 6 and 7, Chap. 43, R. S.— Once in Jeopardy—Evidence—Instructions—Pleading.*

1. Where the commission of a particular act constitutes two offenses of different grades of criminality and punishable differently, a conviction or acquittal of a charge of committing one of them will be no bar to a conviction for the other. The second charge places the defendant in jeopardy for a new offense.

2. Upon an information charging a dram-shop keeper with keeping a "common nuisance," the docket of the police magistrate before whom he was tried on a previous complaint for selling intoxicating liquor in violation of the statute, is inadmissible to prove that the defendant was then found "not guilty."

3. To warrant the conviction of a dram-shop keeper for keeping a common nuisance, it must be shown that he, or his agent or keeper, has knowingly and intentionally sold intoxicating liquors at the place in question, in violation of the statute.

4. In the case presented, the court below improperly instructed the jury that a single sale of intoxicating liquor to a minor without the written order required, although the vendor does not know whether the vendee is a minor, is sufficient to make the place of sale a common nuisance.

5. The Legislature may make a distinction between two offenses in respect to an act common to both, with reference to whether actual intention shall be material.

6. This court will not reverse for errors which worked no injury to the appellant.

[Opinion filed May 25, 1888.]

APPEAL from the County Court of Fulton County; the Hon. THOMAS A. BOYD, Judge, presiding.

Messrs. P. GALLAGHER and COOK & EDWARDS, for appellant.

Messrs. W. M. VANDEVENTER and GRAY & WAGGONER, for appellee.

PLEASANTS, J. This was an information in two counts, charging, in the first, that appellant kept a dram-shop at Lewiston in which he sold intoxicating liquors to persons intoxicated and to persons who were in the habit of getting intoxicated, whereby the place became and was a common nuisance; and in the second, that he there sold intoxicating liquors in less quantity than one gallon without having a legal license to keep a dram-shop, and to minors without the written order required by Sec. 6 of the dram-shop act, whereby, etc., as in the first.

That he did there keep a dram-shop and sold in less quantities than one gallon was proved and not denied, but we do not understand that a conviction was sought or claimed on that ground. Evidence was also introduced to show he sold to persons who were in the habit of getting intoxicated, and to minors without the written order required; and the verdict found the defendant "guilty in manner and form as charged in the information, of selling to a minor;" on which judgment was entered.

We hold that the information does not charge in each or either count distinct and different offenses, but only the one offense of keeping a common nuisance. They allege, in general terms, the violation of several different provisions of the act, but merely as specifications of divers uses to which the place was put, either of which would make it the nuisance charged; and this, we think, is proper pleading.

Since it is known from the verdict which of these uses was found, and consequently also which were not, we might dismiss without further considering the errors complained of in

Nicholson v. The People.

rulings relating to them.    They did no harm to the defendant.
Thus, the license excluded might have disproved the alleged
use of the place for the sale of liquor without a license, but
could have had no tendency to disprove either of the others,
including the one found, or to rebut any evidence introduced
to prove them.    So of the allowance of the question put to
several witnesses—whether certain persons used or were in the
habit of using intoxicating liquors intemperately; though this
court sanctioned a like question in the case of Gallagher v.
The People (*post*), which was affirmed in 120 Ill. 179.

George Weatherlow testified that he was under age, and
that on July 28, 1886, he bought beer twice of some one be-
hind the bar at the place "they say" was kept by the defend-
ant; but he lived at Ellisville, twenty-five miles from Lewis-
ton, and could not swear as of his own knowledge that it was
kept by him.    It appeared on his cross-examination that a
complaint was made against appellant for these supposed sales
and a trial had thereon before the police magistrate of Lewis-
ton in September, 1886, and that the witness testified on that
trial.    He was asked a number of questions as to what he
then stated, and claiming, as to some, that his memory did not
serve him, was challenged to explain how he could remember
any fact as of a particular date, and not the particular date
of every subsequent fact that he could remember, or how
remember any one thing he had done in July, and not
everything he had said in the more recent month of Sep-
tember—a metaphysical mystery that may never be solved
to the satisfaction of adverse counsel, and that costs a deal
of time which might be saved for better use if they would
only consider how little it troubles courts and juries.    No
further attempt was made to show what the witness did
say on that trial, but the defense offered, with all due pre-
liminary proof, the docket of the police magistrate show-
ing that the defendant was found "not guilty;" which the
court, upon objection by the State's attorney, excluded.

Was this error?    That the question of fact, whether
appellant sold beer to the witness, was alike provable and
material in that case and in this; that the docket entry was

proper evidence of the verdict in that; and that such verdict and the judgment thereon would be a bar to any subsequent prosecution of the defendant for the same offense, are propositions not open to debate. But here the proposed evidence was not offered under a plea of former acquittal of the same offense. It was offered alone, without proof of the particular issue or evidence on which it was rendered, as of itself independent affirmative evidence upon the question of fact, treated as open and triable, to contradict the witness' statement that he bought the beer, that statement having been corroborated by Foutz, who was with him at the time, and who also knew and identified the place as appellant's saloon. Its claim to competency for that purpose must rest upon the assumption that a verdict of not guilty in such a case, unaided by further evidence, disproves the allegation of each and every fact that was necessary to maintain the complaint; for, being general, it can have no specific application to only one or some of such facts, and yet the law is that if any one of them be not proved beyond a reasonable doubt the verdict should be "not guilty." It may therefore be consistent with the existence and full proof of all but one; and since it furnishes no means of determining which one was intended, it can not be evidence to contradict either. It is not like a finding upon a particular issue ; nor have counsel suggested that it negatives the allegation that the witness was under age, or did not present a written order from his parent, guardian or family physician, authorizing the sale. We are therefore of opinion it did not tend to disprove the allegation of the sale.

Nor would it have been competent if offered under a plea of former acquittal. In Wragg v. Penn Township, 94 Ill. 11, the Supreme Court, recognizing the difficulty of the question, the conflict of decisions thereon in other States, and the unsteadiness of its own holdings on the subject, seems to have settled the law for Illinois that there is no "prohibition on the power of the Legislature to declare that the commission of a particular act shall constitute two or more offenses, each of a different grade of criminality, and punishable in a different manner ;" and that "a conviction or acquittal in such case, under either

statute, would be no bar to a conviction under the other, for the accused would not be twice in jeopardy for one offense, but only once in jeopardy for each offense." Here, though the act of selling involved was the same, the offenses charged were different, as is obvious upon inspection of the complaints and of the two provisions of the statute. The evidence under the information must therefore be, on the one side and on the other, just as if there had been no complaint and trial before the police magistrate, except so far as the incidents of that trial, and not its result alone, furnished legitimate evidence upon some issue here made; and the docket, unaided, was rightly excluded.

In giving, refusing and modifying instructions asked, the County Court acted upon the understanding and advised the jury that a single sale of intoxicating liquor to a minor without the written order required, whether the vendor does or does not know the vendee is a minor, is sufficient to make the p'ace of sale a nuisance, and the keeper guilty as such under the statute; and the soundness of this construction is the main question in the case.

The statute forbids the sale of intoxicating liquors in any quantity less than one gallon, or in any quantity whatever to be drank upon the premises, or in or upon any adjacent place of public resort, without having a license to keep a dram-shop; R. S. Chap. 43, Sec. 2; or in any quantity, even with such license, to any minor without the written order of his parent, guard ian or family physician, or to any person intoxicated, or who is in the habit of getting intoxicated. *Ibid*, Sec. 6. It is held that the letter of these provisions is as broad as their spirit, and proof of a literal infraction is sufficient to convict. Excepting the case of liquor sold to be drank on the premises etc., (in which this purpose is clearly made an element of the offense,) it is only necessary, *prima facie*, to show the sale, together with the simple circumstance in each case, respectively, to wit, the quantity sold, or the age, condition or habit of the vendee, bringing it within the description of that which is prohibited in general. It is the act of selling in such quantity without a license, or in any quantity, with or

without a license, to such a person, that is, in general, unlawful; and upon proof of the sale made, it is for the party charged to bring himself within the exception by showing his license or the written order mentioned, as the case may be. That at the time of sale he did not know the age, condition or habit of the vendee would be no defense. Knowing that he was selling to the particular vendee, and that if the latter was of the age or in the condition or habit stated, it would be unlawful; it was for him to ascertain the fact, and he must sell at his peril. McCutcheon v. The People, 69 Ill. 601, 605; Humpeler v. The Same, 92 Ill. 400.

The information here, however, is not for unlawfully selling intoxicating liquor, but for keeping a place alleged to be a common nuisance. It is brought under another section of the same act, which declares ".all places where intoxicating liquors are sold in violation of this act * * * common nuisances, and all rooms, taverns, eating houses, bazars, restaurants, drug stores, groceries, coffee houses, cellars or other places of public resort, where intoxicating liquors are sold in violation of this act, shall be deemed public nuisances," and provides that " whoever shall keep any such place by himself, or his agent or servant, shall, for each offense, be fined," etc., the penalty being greater in amount than for unlawful selling, though of the same kind; and including in addition the shutting up and abatement of the place until the keeper shall give the bond therein prescribed.

The question is upon the proper construction of the phrase, " where intoxicating liquors are sold in violation of this act." Does it include a place where they are so sold in a single instance and without the actual permission or consent of the keeper?

It is said that the keeping of the place being innocent except for the unlawful sales there made, such selling is the principal element of the offense; that what is an unlawful selling under the preceding sections must be equally so here; that as knowledge on the part of the seller that they are unlawful is not material under them it can not be so under this, and therefore proof of a sale that is in fact unlawful, and that the defendant

kept the place where it was made, meets all the requirements of the statute.

We observe that under those sections the party charged can be held liable only for sales made by himself or his agent. The actual seller must necessarily have actual knowledge of the particular sale when proposed, and therefore, since not all are lawful, something to put him on inquiry as to its lawfulness. Every proposition to buy furnishes an occasion for this inquiry. He is in a position to choose, and must choose at his peril, between different courses, to make the sale or not to make it. If he makes it and it is in fact unlawful, he intentionally commits the act which is forbidden, and so, whether he intends to violate the law or not, a "criminal offense" within the statutory definition. In thus doing what is in fact a violation of a public law, there is the requisite "union or joint operation of act and intention;" and his ignorance, in such a case, of a condition of fact which makes the act unlawful, must be charged to "criminal negligence." R. S. Chap. 38, Sec. 280.

But, upon the construction of Sec. 7, here contended for, it might be otherwise. One may keep a place where such sales are in fact made, but without his knowledge, and by another, who is in no sense his agent in that behalf. He may have no suspicion that liquor is there sold at all, nor any knowledge of any fact to put him on inquiry in that direction. If a grocer's clerk should clandestinely make one such sale in the store, the merchant who kept it would be within the law, so construed, although not liable for the sale itself under either of the other sections; but, would he be within its real meaning, liable to be fined and imprisoned as a criminal, and to have his store closed until he should give bond that nobody thereafter, clandestinely or otherwise, would make another such sale therein? The grocer is no more entitled to protection against such danger from unauthorized acts of others than the druggist or restaurant keeper.

Nor is the case of the licensed dram-shop keeper different in principle. Until the contrary is shown he too is presumed to be honest and law-abiding in the conduct of his business

His liability under Secs. 2 and 6, for unlawful sales by his clerk or servant, rests upon the fact that they are made by his authority. From the character of the business the authority of the agent to sell must be general as to vendees. The principal can not limit it by excepting persons in classes, as minors, drunkards and habitual drunkards. The law itself limits his own authority as well as that of agents, by excepting these; and that which he gives them, to sell generally, though subject to these exceptions, necessarily carries with it authority to determine whether the proposing purchaser is of an excepted class, and also the risk to himself of their selling to such, ignorantly or wilfully. Upon any other construction it would be difficult, if not impracticable, to enforce these provisions as against licensed dram-shop keepers, by reason of the lawfulness of their sales in general and of the irresponsibility in general of mere bartenders.

But since he is not responsible even for unlawful sales made at his place by others who are not his agents and without his permission, he surely can not be liable for keeping a place where intoxicating liquors are unlawfully sold if the sales are made by such others and without his permission. Then, proof of the mere facts that he keeps the place and that unlawful sales are there made, is not sufficient to warrant his conviction. Something more than a literal infraction of this statute must be shown.

We further observe that an agent to sell, who in respect to sales may stand in the place of the principal, with authority to sell as generally as he, may not be his agent to keep the place; and that no other can make him liable under section seven. The act of an agent only to sell will charge him only as seller.

The question, then, is whether his keeping a place where an unlawful sale is made for which he is liable as seller, though made without his actual permission or knowledge, brings him within the meaning of that section.

It may seem a natural inference from his liability for the sale, on whatever ground, that he should be treated for all purposes as the actual seller; that whatever consequences

would legally follow from a sale by himself would so follow from one made by an agent for whose act he is legally responsible. But the Legislature certainly might make a distinction between two offenses, in respect to an act common to both, so that actual intention should be a material element in one and not in the other. We are inclined to the opinion that it has so done in this statute.

It has made the act of selling, in person or by an agent, in certain specified cases, under conditions actually existing and in no way dependent upon the knowledge or intention of the seller, absolutely unlawful. Such are the provisions, in terms, of sections two and six, and for reasons above suggested a construction in accordance with them would seem to be necessary to give them practical effect. But it has not so declared the possession or control of every place where liquor happens to be sold in violation of law, nor of every place where it is so sold by an agent. The language of the act, transposed without changing the sense, is " whoever, by himself, or his agent, or servant, shall keep any such place," etc. We understand that the "keeping" of a place, imports knowledge of the manner or condition in which it is kept and a continuing purpose so to keep it. Here the term is applied to a place specifically described as one where intoxicating liquors are sold in violation of the act, and the purpose thus imported must extend and apply to such a place. Similar language in reference to other places is in common use, with no difference in the common understanding of its meaning. If it be said of any that goods of a certain kind are there sold on stated terms or for stated purposes, this understanding would be that they were so sold with the knowledge or according to the purpose of the proprietor. So, if it be said that intoxicating liquors are there sold in violation of law, nobody would suppose that reference was had to sales that were accidental, occasional, or made by unscrupulous or compliant agents, against the will or without the knowledge of the principal. The usual sense of the language is that such sales are characteristic of the place. Furthermore, the act declares it to be a common or public nuisance; and it is believed that in all like

cases, whether at common law or under statutes, knowledge of the facts or conditions which make the place such, is and must be fairly imputable to the keeper, or to the agent, for whose keeping he is responsible. See 2 Bishop's Crim. Law, Secs. 258, 258a (2d Ed.) and the Kentucky cases there cited. If it be indeed a public nuisance these must be such as they might and should know; so that actual ignorance of them would be inexcusable.

Under the provision of the Ohio law, from which ours so far as above quoted is literally copied, it was held necessary " to aver in the information and prove on the trial that the place where the liquor was bought was a *place of public resort*. And the proof must also show that it was a place where liquors were *habitually* sold in violation of the act. A single sale does not make the place a nuisance, or the seller a keeper, within the meaning of the act. A series of sales is necessary." Miller v. The State, 3 Ohio State R. 488. And while a majority of our own court declined to follow the construction there given to the corresponding provisions against selling to minors, etc., which required the allegation and proof of knowledge by the seller that the purchaser was a minor (McCutcheon v. The People, *supra*), and, in another case, the rule of pleading declared in Birney v. The State, 8 Ohio, 230, therein cited (Ells v. The People, 4 Scam. 509), these differences from the Ohio court do not relate to its views above quoted. Indeed, in the case in 4 Scam., which, like that of Birney, was for harboring and secreting a slave, it was conceded that an actual intention to defraud the owner—which certainly implies knowledge that the party harbored was a slave—was of the essence of the offense, but held unnecessary to aver it in terms, because " the words 'harbor and secrete' have, by long usage in connection with this subject, acquired a specific meaning which includes both act and intention," and because the indictment was in the exact language of the statute, which our law provides " shall be considered sufficiently technical and correct." In Streeter v. The People, 69 Ill. 598, speaking of the provisions of this seventh section as they stood in the act of 1872 (Sec. 3), the court said : " The object

is to prevent the assembling of idle and evil disposed persons for the purpose of violating the laws of the State. Under what is called the police power, the Legislature has the right to authorize the abatement of a public nuisance; and the carrying on of an illegal traffic in intoxicating liquors, and the assembling of idle and vicious persons for that purpose, is a nuisance, and may be so declared and abated according to law;" and the Ohio case above cited is referred to with approval on several points. Although the construction of this section was not directly involved, these expressions indicate an opinion in harmony with that of the Ohio court, that the evil intended was the keeping or maintaining of a place of public resort for the purpose of violating the laws of the State by carrying on the illegal traffic. Such violation by individual sales, wherever and however made, is expressly and amply provided against by the two other sections, and it is not to be presumed that the Legislature intended to cover the same cases by a further provision, in still another section, with heavier and additional penalty, which might be used to close up places of lawful business because of an unlawful sale there made without the knowledge or permission of the proprietor or of his agent in charge of it. Such a construction does not seem necessary to give practical effect to the law in cases clearly contemplated by it, and would make it unreasonable, unjust and oppressive.

In view, then, of the general principle that the commission of an act which is not *malum in se*, in blameless ignorance of a fact which makes it unlawful, is not criminal—of the nature of the offense in question—of the terms used to describe it, including the offender and the place—of the other provisions relating to unlawful sales, and of the authorities cited, we hold that to warrant a conviction under this section it must be shown that the keeper of the place, or his agent to keep it, intended there to make unlawful sales of intoxicating liquors as well as that they were so made. We do not say the indictment or information should allege the *scienter* in terms. As in the case of Ells v. The People, *supra*, it is implied in the terms "kept" or "keeper," and a charge in the language of

the statute may be sufficient. Nor is it necessary to prove that the place was kept as charged, for any particular length of time (Commonwealth v. Gallagher, 1 Allen, 592); but the jury must find from the evidence that the defendant or his agent, as keeper, knowingly and intentionally kept such a place.

For the error in the instructions on this point the judgment will be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*